**NOT FOR PUBLICATION**                                    **[Dkt. Ents. 9, 19]**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| ROBERT R. REEVES, | : |
| | : Civil Action No. |
| | : 09-2665 (RMB/JS) |
| Plaintiff, | : |
| | : |
| v. | : **OPINION** |
| | : |
| NEW JERSEY STATE TROOPER | : |
| JOSEPH MAHONEY, | : |
| | : |
| Defendant. | : |

Appearances:

Mark J. Molz, Esquire
1400 Route 38 East
Po Box 577
Hainesport, New Jersey 08036
         Attorney for Plaintiff

Christina M. Glogoff, Esquire
Office of the NJ Attorney General
25 Market Street
P.O. Box 116
Trenton, New Jersey 08625-0116
         Attorney for Defendant

**BUMB, United States District Judge:**

**I.   INTRODUCTION**

     This matter comes before the Court upon a motion for summary

1

judgment by the defendant, New Jersey State Trooper Joseph Mahoney ("Defendant" or "Mahoney"). [Dkt. Ent. 9.] Plaintiff Robert R. Reeves ("Plaintiff" or "Reeves") has opposed the motion and filed a cross-motion for summary judgment. [Dkt. Ent. 19.] For the reasons set forth below, the Court grants Defendant's motion and denies Plaintiff's cross-motion.

**II. FACTS**

The following facts are taken from the parties' statements of undisputed material facts. On July 2, 2007, Defendant was assigned to the Tactical Patrol Unit ("Tac Pac"), Troop C, working the Tuckerton Red Lion area of New Jersey. (See Def.'s Statement of Undisputed Material Facts ("SUMF") ¶ 10.) As a member of Tac Pac, Mahoney was assigned to patrol high traffic areas, such as Route 72. His duties included preventing accidents, ticketing for traffic violations, investigating drunk driving incidents and otherwise preventing criminal interdiction. (SUMF ¶ 11.)

Plaintiff was traveling on Route 72, heading eastward. He had been drinking and had had at least four to five beers at a nearby bar. (Def.'s Ex. D(4), Trial Tr. 62:4-7, Apr. 1, 2008; Def.'s Ex. C, Reeves Dep. 66:13-14, Apr. 19, 2010.) Defendant was also driving east on Route 72. The parties agree that just before milepost 4 on Route 72, there is an upward grade in the

2

roadway, which limits visibility on the other side of the crest of the roadway.  (SUMF ¶ 13.)  Defendant testified that after driving over the crest of this hill, he first observed Plaintiff's vehicle, which was traveling completely on the shoulder.  (SUMF ¶ 14, 17.)  Defendant testified that he observed Plaintiff traveling on the shoulder for what he estimated at the time to be approximately one half mile.  (SUMF ¶ 18.)  He became concerned that the driver was suffering from a medical condition or was having a problem with his car, so he activated his lights and stopped Plaintiff's vehicle for driving on the shoulder of the roadway in violation of N.J.S.A. 39:4-88(b), Failure to Maintain Lane of Travel.  (SUMF ¶ 23, 19.)  During the stop, Defendant asked Plaintiff why he was traveling on the shoulder of the roadway, and Plaintiff explained that he was doing so because he was planning on turning right at his street, Cedar Lane, which runs off of Route 72.  (SUMF ¶ 22.)

   Upon approaching Plaintiff's vehicle, Mahoney asserts that Plaintiff's eyes were watery and glassy, and he smelled a strong odor of alcohol emanating from the vehicle.  (SUMF ¶ 26.)  It is unclear from the record whether Mahoney performed a field sobriety test on Plaintiff.  The parties do agree, however, that once at the Red Lion Police Station, Plaintiff submitted to an Alcotest, which produced a positive test result for alcohol over

the legal limit. (SUMF ¶ 29.) Mahoney charged Plaintiff with Driving Under the Influence ("DUI"), N.J.S.A. 39:4-50, and for failing to maintain his lane of travel, N.J.S.A. 39:4-88(b). (SUMF ¶ 30.)

On April 1, 2008, Plaintiff appeared before Richard E. Andronici, J.M.C., Woodland Township Municipal Court, for a hearing on the charges. Plaintiff also filed a suppression motion, arguing that Mahoney did not have a reasonable and articulable suspicion that a motor vehicle offense had been committed sufficient to justify the stop. (SUMF ¶ 31.) At the hearing, Mahoney testified that he observed Plaintiff's vehicle traveling 100 percent on the shoulder of the eastbound side of Route 72 for approximately one half mile. (SUMF ¶ 32.) It is this testimony upon which Plaintiff premises his claim that Mahoney submitted false testimony. Contrary to Mahoney's testimony, Plaintiff testified that, in his estimation, the distance between milepost 4 and Cedar Lane was only three-tenths of a mile. (SUMF ¶ 34.)

At the conclusion of the April 2008 hearing, Judge Andronici reserved his decision on the suppression motion. (SUMF ¶ 36.) On June 17, 2008, Judge Andronici denied Plaintiff's suppression motion and upheld the charges of a violation of 39:4-50, Driving Under the Influence ("DUI"), and 39:4-88(b), Failure

to Maintain a Lane. (SUMF ¶ 37.) In denying Plaintiff's suppression motion, Judge Andronici considered both Plaintiff and Mahoney's testimony regarding the distance between Milepost 4.0 and Cedar Lane:

> As to the discrepancy regarding the five-tenths of a mile versus three-tenths of a mile, it is not that relevant. I find in this case that the defendant traveled exclusively on the shoulder of the roadway for between three-tenths of a mile and five-tenths of a mile as will be evident when I make my decision. This slight discrepancy is not relevant.

(SUMF ¶ 38, Def.'s Ex. J, Andronici Op. Tr. 9:3-10, June 17, 2008.) Following Judge Andronici's decision denying Plaintiff's suppression motion, Plaintiff pled guilty to Driving Under the Influence. The other moving violation was merged into the DUI. (SUMF ¶ 39.) Because this charge was Plaintiff's sixth DUI, the sentencing judge had no discretion in Plaintiff's sentence. The court sentenced Plaintiff to 180 days in the Monmouth County Jail. (SUMF ¶ 40.)

Plaintiff appealed Judge Andronici's June 17, 2008 ruling to the Superior Court of New Jersey, Law Division, Criminal Part. On October 3, 2008, Judge Wells overturned the Municipal Court decision, vacating the ruling sustaining the stop and ordering Plaintiff's release from confinement. (SUMF ¶¶ 41-42.) Judge Wells held that Defendant Mahoney did not have a reasonable and articulable suspicion that Reeves was committing a traffic

5

offense.  (Def.'s Ex. K, Hr'g Tr. 15:21-16:1, Oct. 3, 2008.)  He came to this conclusion after observing pictures of the area, which he felt suggested that Mahoney could not have observed Plaintiff driving on the shoulder for half of a mile, as Mahoney had testified.  Further, Judge Wells found that the stop was not a proper application of the community care-taking function (stopping a motorist to see if there is a health problem), because it occurred during daylight hours and because he believed Plaintiff's use of the shoulder as a deceleration lane in order to make his turn safely onto Cedar Lane was reasonable.  (See id. 16-18.)  Judge Wells vacated the plea, conviction and sentence.  In ordering Plaintiff's immediate release from confinement - by then Plaintiff had served 102 days in jail (see Pl.'s Opp. Br. 11) - Judge Wells stated:

> I want you to understand, sir, that the ruling I've made here in your favor is not simply a legal technicality.  It is the enforcement of what I think is a very significant constitutional right that you possessed and I had no choice under my duty as a Judge to enforce it.  But I also have to – you have to know that I understand that on this occasion you were probably pretty seriously inebriated and that you have a very bad driving record, very bad.  And I am frightened to death that you're going to get out on a highway sometime in the near future and kill somebody if you don't watch yourself.

6

(Def.'s Ex. K, Hr'g Tr. 19:21-20:8.)

Plaintiff then filed a complaint in the Superior Court of New Jersey, Law Division, Burlington County, Docket No. BUR-L-0326-09, against the New Jersey State Police and Mahoney in both his individual and official capacities. In the Complaint, Plaintiff alleges that Defendant Mahoney and the New Jersey State Police violated his civil rights guaranteed him under the United States Constitution in violation of 42 U.S.C. § 1983. The Complaint does not cite a specific constitutional violation, but instead alleges that Defendant "deprived the Plaintiff Robert J. Reeves, Jr. of life, liberty and the pursuit of happiness through his false police report and false testimony under oath." (Compl. ¶ 2.)

By order dated May 20, 2009, the Honorable Marc M. Baldwin, J.S.C., granted the New Jersey State Police's motion, dismissing the complaint with prejudice.

On June 2, 2009, the remaining defendant, Mahoney, filed a Notice of Removal with the District Court pursuant to 28 U.S.C. §§ 1441(b) and (c) and § 1443. The parties engaged in discovery and upon the completion of discovery, the pending motions for

7

summary judgment followed.[1]

### III. LEGAL ANALYSIS

Defendant Mahoney has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56.[2] Defendant argues that the doctrine of qualified immunity shields him from suit.

#### A. Standard of Review

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[3] A fact is "material" if it will "affect the outcome of the suit under the governing law . . . ." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986). A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." <u>Id.</u> at 250.

When deciding the existence of a genuine dispute of material

---

[1] Discovery concluded on May 17, 2010.

[2] Although Defendant cites to the standard for dismissal under Federal Rule of Civil Procedure 12(b)(6), Defendant engages in no analysis.

[3] Amendments to the Federal Rules of Civil Procedure became effective on December 1, 2010. The oft-cited summary judgment standard is now located in Rule 56(a) rather than Rule 56(c). Although the wording of the standard has changed slightly, replacing the word "issue" with "dispute" ("The court shall grant summary judgment if the movant shows that there is no genuine *dispute* as to any material fact"), this change does not affect the substantive standard or the applicability of prior decisions construing the standard. Fed. R. Civ. P. 56(a) advisory committee's note.

fact, a court's role is not to weigh the evidence: all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party." Meyer v. Riegel Products Corp., 720 F.2d 303, 307 n.2 (3d Cir. 1983).  However, "a mere scintilla of evidence," without more, will not give rise to a genuine dispute for trial. Anderson, 477 U.S. at 249.  In the face of such evidence, summary judgment is still appropriate "where the record . . . could not lead a rational trier of fact to find for the nonmoving party . . . ." Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-587 (1986).  "Summary judgment motions thus require judges to 'assess how one-sided evidence is, or what a 'fair-minded' jury could 'reasonably' decide.'" Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460 (3d Cir. 1989) (quoting Anderson, 477 U.S. at 265).

    The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P.

56(c)).  Then, "when a properly supported motion for summary judgment [has been] made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" <u>Anderson</u>, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)).  The non-movant's burden is rigorous: it "must point to concrete evidence in the record"; mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment. <u>Orsatti v. New Jersey State Police</u>, 71 F.3d 480, 484 (3d Cir. 1995).

**B.   Discussion**

Plaintiff has brought this action against Defendant Mahoney pursuant to 42 U.S.C. § 1983.  Notwithstanding Section 1983's imposition of liability to "[e]very person,"[3] courts have limited its application according to common-law immunities recognized at the time of its 1871 enactment.  <u>Burns v. Reed</u>, 500 U.S. 478, 484 (1991) (citing <u>Pierson v. Ray</u>, 386 U.S. 547, 554 (1967)).  Specifically, courts have applied two kinds of immunities in §

---

[3] Section 1983 of Title 42 of the United States Code provides:
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

1983 actions: qualified immunity and absolute immunity. Yarris v. County of Delaware, 465 F.3d 129, 135 (3d Cir. 2006).

Defendant Mahoney seeks summary judgment on the ground that he is protected by qualified immunity. Qualified immunity shields officials from suit for their objectively reasonable conduct. See Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808, 815 (2009). The doctrine operates "to ensure that before they are subjected to suit, officers are on notice that their conduct is unlawful." Hope v. Pelzer, 536 U.S. 730, 739 (2002). Thus, qualified immunity protects officials when they may have acted upon reasonable errors, whether mistakes of law or fact. Pearson, 129 S. Ct. at 815.

The Supreme Court has suggested a two-step inquiry to determine whether a defendant-official is entitled to the protection of qualified immunity: "First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." Id. at 815-16 (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). Importantly, when conducting

this inquiry on summary judgment, courts must view all facts and reasonable inferences in the light most favorable to the plaintiff. See Giles v. Kearney, 571 F.3d 318, 326 (3d Cir. 2009).

While the two-step inquiry is no longer mandatory, it continues to provide a useful framework for conducting a qualified immunity analysis. Brandt v. Monte, 626 F. Supp. 2d 469, 485 (D.N.J. 2009) (citing Pearson, 129 S. Ct. at 815-16). In this case, the Court turns first to whether Plaintiff has shown a constitutional violation.[4]

As an initial matter, the Court notes that the Complaint fails to allege a specific constitutional tort or even invoke the words "malicious prosecution" (although it need not, see Backof v. New Jersey State Police, 92 Fed. Appx. 852, 856, n. 4 (3d Cir. 2004)). Plaintiff merely asserts that Defendant Mahoney "individually and as [an] agent for the New Jersey State Police, deprived [Plaintiff] of life, liberty and the pursuit of happiness through his false police report and false testimony

---

[4] Defendant Mahoney engages in an analysis of the second prong of the qualified immunity analysis. Defendant argues he is entitled to qualified immunity because he reasonably believed his stop was founded on reasonable suspicion or that he was entitled to stop Plaintiff under a community care-taking function. The Court does not reach this issue because it finds that Plaintiff has failed to allege a constitutional violation.

12

under oath" in violation of 42 U.S.C. § 1983 and "[a]s a direct and proximate result of the civil rights violations . . . Plaintiff . . . suffered damage, emotional distress, loss of income, loss of liberty for 106 days in the Burlington County Jail and other damages."  (Compl. ¶¶9, 11.)  Nevertheless, Plaintiff's opposition papers characterize his claim as one for malicious prosecution grounded in the Fourth Amendment.  See Pl.'s Opp. Br. at Point I ("Plaintiff's Cause of Action for Malicious Prosecution Against Trooper Mahoney Is Viable") (emphasis added).  Thus, Plaintiff is bound by this theory of liability.  See Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 358 (3d Cir. 1996) ("[Judicial estoppel] is designed to prevent litigants from playing fast and loose with the courts." (citation omitted)).[5]

---

[5] The Court notes that Plaintiff has cursorily asserted in his opposition brief that he suffered either a Fourth Amendment violation "or a violation of another explicit test of the Constitution."  (See Pl.'s Opp. Br. at 6.)  Significantly, Plaintiff's brief fails to elaborate on what "explicit test" this might be, leaving the Court to guess at the possible constitutional torts he might invoke.  Although the Third Circuit has suggested that a Fourth Amendment violation is a necessary predicate to a § 1983 claim for malicious prosecution, it appears to be an open question whether a denial of procedural due process could support such a claim instead.  See Backof, 92 Fed. Appx. at 856, n.6.  In any case, Plaintiff has not asserted a claim for procedural due process, and the Court is mindful that it "will not expend its limited resources rooting about the case law and the parties' briefs" to make Plaintiff's case for him.  Feliciano v. City of Philadelphia, No. 96-cv-6149, 1997 WL 59325 at *5 (E.D.Pa Feb. 11, 1997); see United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.")  Thus, Plaintiff has waived this argument.

13

To prevail on a Fourth Amendment malicious prosecution claim under § 1983, a plaintiff must show that:

(1) the defendant initiated a criminal proceeding;

(2) the criminal proceeding ended in the plaintiff's favor;

(3) the proceeding was initiated without probable cause;

(4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and

(5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. McKenna v. City of Philadelphia, 582 F.3d 447, 461 (3d Cir. 2009) (citing Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003)); DiBella v. Borough of Beachwood, 407 F.3d 559, 601 (3d Cir. 2005); Camiolo v. State Farm Fire and Casualty Co., 334 F.3d 345, 362-363 (3d Cir. 2003).

The Court considers the last prong first. Although Plaintiff argues that he "suffered a deprivation of liberty consistent with a violation of the Fourth Amendment," he only attempts to recover for losses related to his post-conviction detention, which are not recoverable under the Fourth Amendment. (See Pl.'s Opp. Br. at 11.) In his opposition papers, Plaintiff asserts only the following post-conviction damages:

14

> It is undisputed [that] Plaintiff was incarcerated in the Burlington County Jail for 102 days. He was incarcerated for the motor vehicle stop which resulted in a DWI charge. This is a clear deprivation of liberty and therefore Plaintiff satisfies the fifth and final element of malicious prosecution.

(Id.) Similarly, in his answers to Defendant's Interrogatories, Plaintiff cites only post-conviction losses, stating that he "suffered from great distress from being in jail for 106 days.[6] [He] fell behind on his bills. [He] had just bought his house . . . and since [he] could not make any payments while in jail [he] got behind on [his] mortgage. [He is] still two months behind and at great risk of losing [his] house. [He] was diagnosed with high blood pressure and high blood sugar." (Pl.'s Ex. 8, Def.'s Interrog. ¶ 22.) The Complaint also alleges only post-conviction losses, i.e., for "emotional distress, loss of income, loss of liberty for 106 days in the Burlington County Jail and other damages." (Compl. ¶ 11.)

Significantly, Plaintiff's post-conviction incarceration is not a seizure within the meaning of the Fourth Amendment and, therefore, Plaintiff has failed to allege a constitutional violation to support his § 1983 claim. Donahue v. Gavin, 280 F.

---

[6] The Court notes a discrepancy (albeit irrelevant to this motion) in the length of Plaintiff's detention – he alternately asserts that it lasted 102 and 106 days. (Compare Pl.'s Opp. Br. 11 with Pl.'s Ex. 8, Def.'s Interrog. ¶ 22.)

15

3d 371, 381 (3d Cir. 2002)(affirming summary judgment of plaintiff's Fourth Amendment malicious prosecution claim to recover post-conviction losses, noting that "damages for post-conviction injuries are not within the purview of the Fourth Amendment"); Torres v. McLaughlin, 163 F. 3d 169, 173-75 (3d Cir. 1998)(finding that "post-conviction incarceration cannot be a seizure within the meaning of the Fourth Amendment").  Indeed, this case is quite similar to the facts presented in Torres.  In Torres, the plaintiff alleged a Fourth Amendment malicious prosecution claim based on the defendant police officer's role in initiating the prosecution by conveying false information to the prosecutor.  163 F.3d at 172.  The resulting harm was the plaintiff's incarceration after the jury found him guilty.  Id.  The Third Circuit specifically confronted the issue presented here, i.e., whether Torres' post-conviction incarceration was a Fourth Amendment seizure for purposes of bringing a 1983 malicious prosecution claim.  Torres, 163 F.3d at 174.  The Court held that it was not.  The Court concluded that the "limits of Fourth Amendment protection relate to the boundary between arrest and pretrial detention" (with some circumstances during pretrial detention) and thus "post-conviction incarceration cannot be a

16

seizure within the meaning of the Fourth Amendment, and [plaintiff's] incarceration did not violate his Fourth Amendment rights." Id. at 174. Accordingly, Plaintiff Reeves, by asserting only post-conviction losses, has failed to allege a Fourth Amendment violation.

Furthermore, the Court notes that allowing Plaintiff to amend his inartful complaint would be inappropriate, because the defect arises not from inadequate specificity. Rather, as the Third Circuit noted in Donahue, "the specificity [Plaintiff] has pled reveals that he is trying to recover for injuries that are unrelated to the constitutional guarantee his claim is predicated upon." Donahue, 280 F.3d at 382-83 (citing Torres, 163 F.3d at 174.). It is clear from Plaintiff's complaint, opposition papers, and interrogatory responses, that the damages Plaintiff seeks to recover result from his conviction and sentence and not from his arrest. Moreover, permitting Plaintiff leave to amend the complaint at this late juncture, when discovery has long since concluded, would be unjust. Cf. Backof, 92 Fed. Appx. at 855, n.1 & 858 (remanding § 1983 malicious prosecution action to district court to allow plaintiff to amend complaint, where district court had granted 12(b)(6) motion at pleadings stage).

17

Nevertheless, even if the Court could overlook Plaintiff's failure to allege a Fourth Amendment violation, the Court would still be constrained to find that Plaintiff has not established the tort of malicious prosecution, because he has failed to show his actual innocence of the underlying DUI charge. Donahue, 280 F.3d at 383, n.18. It is well-settled in this Circuit that the second prong of the test for malicious prosecution requires a plaintiff to show not only favorable termination of the underlying proceeding, but also actual innocence of the crime charged. See White v. Brown, No. 10-cv-2502, 2010 WL 4358469 at *3 (3d Cir. 2010); Kossler v. Crisanti, 564 F.3d 181, 187 (3d Cir. 2009) (citing Donahue, 280 F.3d at 383; Gilles v. Davis, 427 F.3d 197, 211 (3d Cir. 2005)); Backof, 92 Fed. Appx. at 856, n.7 (citing Hector v. Watt, 235 F. 3d 154, 156 (3d Cir. 2000)). For example, in White, the Third Circuit recently held that the plaintiff could not establish a claim for malicious prosecution where he had pled guilty to a firearm charge in exchange for dismissal of the remaining charges against him. Since the dismissal of those charges resulted from his plea agreement and not his innocence, he could not establish favorable termination for purposes of his § 1983 malicious prosecution action. White,

2010 WL 4358469 at *3.

Plaintiff ignores this binding jurisprudence, arguing that the criminal proceedings terminated in his favor, because "Judge Wells vacated the ruling sustaining the stop," as well as Plaintiff's guilty plea. (Pl.'s Opp. Br. at 7.) Clearly, Plaintiff has not satisfied Donahue and its progeny. He has never asserted his innocence of the underlying charges; he pled guilty to the DUI, admitted to taking an Alcotest, which confirmed he had been driving over the legal limit for alcohol, and admitted to having four to five beers before the incident. (Def.'s Ex. D(4), Trial Tr. 62:4-7; Def.'s Ex. C, Reeves Dep. 66:13-14; SUMF ¶ 29.) Even the appellate court that overturned the plea and conviction believed that Plaintiff was guilty of the DUI charge. (Def.'s Ex. K, Hr'g Tr. 19:21-20:8 ("I understand that on this occasion you were probably seriously inebriated and that you have a very bad driving record, very bad.").)

Thus, because Plaintiff has not shown a cognizable constitutional violation, his § 1983 claim fails accordingly.[6]

---

[6] Since the Court grants Defendant's motion for summary judgment, it need not reach the issue of whether Defendant has waived his Eleventh Amendment immunity from suit in his official capacity, by removing this case to federal court. The Court notes, however, that Plaintiff's bare argument to this effect has again ignored the relevant case law. When state officials, such as Defendant, are sued in their official capacities for damages, they are not

19

**IV.   CONCLUSION**

For the above reasons, Defendant's motion for summary judgment is **granted**, and Plaintiff's cross-motion for summary judgment is **denied**.  An accompanying Order shall issue this date.


Dated: January 14, 2011                     s/Renée Marie Bumb
                                            RENÉE MARIE BUMB
                                            United States District Judge

---

considered "persons" under § 1983 and are thus immune from suit.  Will v. Michigan Dep't. of State Police, 491 U.S. 58, 71 (1989).